IN RE the MARRIAGE OF: Denis WIKEL, Petitioner-Appellant-Cross Respondent,

v.

Linda WIKEL, Respondent-Respondent-Cross Appellant.

Court of Appeals

*No. 91-1777. Submitted on briefs March 9, 1992.—Decided March 25, 1992.*

(Also reported in 483 N.W.2d 292.)

On behalf of the petitioner-appellant-cross respondent the cause was submitted on the briefs of *Robert G. Bramscher* of Kenosha.

On behalf of the respondent-respondent-cross appellant, the cause was submitted on the briefs of *Thomas B. Hartley* of *Heide, Hartley, Thom, Wilk & Guttormsen* of Kenosha.

Before Brown, Anderson and Snyder, JJ.

SNYDER, J. Denis Wikel appeals from a judgment of divorce awarding his former wife Linda Wikel

maintenance of $2,000 a month for eight years. We affirm that award because we see no abuse of discretion.

Linda cross-appeals, arguing that the trial court erred by valuing stock and assigning stock options as of the date trial commenced rather than on the date the divorce was granted, some nine months later.[1] We conclude that special circumstances warranted valuing the assets as of the date trial commenced. We therefore affirm the judgment.

Denis and Linda were divorced after a twenty-five year marriage. The couple has two adult children, neither of whom resides at home. Denis had a pharmacy degree when he married Linda and achieved a master's degree in business (MBA) during the marriage. His employer paid for the MBA. Denis worked two pharmacy jobs throughout much of the marriage. He now is a management executive at a large pharmaceutical firm and earns $73,000 a year, plus generous stock options and bonuses.

Linda was a homemaker until their youngest child was four years old. She then began college parttime, completing a bachelor's degree in psychology in 1988. Linda earns $19,000 a year as a social worker at a nursing home.

The issues before the trial court were debt allocation, property division, attorney's fees and maintenance. After analyzing the relevant statutory factors and discussing the mandates of *LaRocque v. LaRocque,* 139 Wis. 2d 23, 406 N.W.2d 736 (1987), the trial court allocated the parties' debts, ordered a 50/50 property divi-

[1]The divorce trial began on August 9, 1990. The second and final day of trial was January 7, 1991, at which time the court asked the parties for briefs. No oral pronouncement of divorce is evident in the January 7 transcript. The court issued a written decision dated May 9, 1991.

sion, denied contribution for attorney's fees and ordered Denis to pay Linda $2000 a month maintenance for eight years. Denis appeals only the maintenance award, primarily challenging its duration.

The determination of the amount and duration of maintenance rests within the sound discretion of the trial court and will not be upset absent an abuse of that discretion. *Id.* at 27, 406 N.W.2d at 737. Discretion is exercised properly when the court arrives at a reasoned and reasonable decision through a rational mental process by which the facts of record and the law relied upon are stated and are considered together. *Id.*

Section 767.26, Stats., governs maintenance. Maintenance is designed to further two objectives: to support the recipient according to the parties' needs and earning capacities, and to ensure a fair and equitable financial arrangement in the individual case. *LaRocque,* 139 Wis. 2d at 32–33, 406 N.W.2d at 740. When a couple has been married many years and achieves increased earnings, an equal division of total income is a reasonable starting point in determining maintenance. *Id.* at 39, 406 N.W.2d at 742. This division may be adjusted upon reasoned consideration of the statutory factors. *Id.*

Denis contends that $2,000 a month maintenance for eight years constitutes an abuse of discretion because, while Linda's current salary may be low, her education provides her a greater earning potential. He claims that Linda could seek a better-paying job now or could further her education so as to command a larger salary later, but that the award provides her with no incentive to do either.

The trial court considered Linda's testimony that she was a homemaker until the youngest child was four

282

years old; that after that she went to school parttime; that homemaking and child care duties were largely hers while her husband advanced his education and worked two jobs; that she now earns approximately $19,000 as a social worker at a nursing home; that she has not sought other, more lucrative, jobs because she likes the job she has; that she recently completed her bachelor's degree after nine years of parttime study; that career advancement likely would entail getting a master's degree; and that, although she has not ruled out further education, neither has she seriously investigated it.

The court then commented that the Wikels' twenty-five year marriage, their current and potential salaries, their education levels and the feasibility that Linda could become self-supporting at a standard of living reasonably comparable to that enjoyed during the marriage put the Wikels' situation "just about on all fours" with *LaRocque.* The trial court stated:

> [Denis] earns $73,000 per year while [Linda] earns $19,000 per year. She certainly cannot live on that amount and maintain her pre-divorce standard of living. She has a college degree and is employed at a position she likes . . .. This maintenance award will allow her to come close to the pre-divorce standard of living without dipping into her property award, and will enable her to devote her energy toward her work so that she can make the progress necessary to become self-sufficient so she can support herself in a manner that she is accustomed, which hopefully will be within eight years.

Denis complains that the award robs Linda of incentive to improve herself financially and that she is "shirking" by working at a moderate-paying job she enjoys. *Cf. Roellig v. Roellig,* 146 Wis. 2d 652, 657–58,

431 N.W.2d 759, 761-62 (Ct. App. 1988). We conclude that the trial court recognized those concerns and provided a structure under which Linda could improve her income within a specific time period. The trial court noted Linda's present income, did not find her income to be unreasonable at the time of the award, recognized the potential for financial independence, and limited the award to eight years. While the law prohibits underemployment to avoid the obligation of self-support, *In re Zirngibl,* 165 Wis. 2d 130, 140, 477 N.W.2d 637, 641 (Ct. App. 1991), the record here does not support the notion that Linda is intentionally underemployed and does recognize her future capability to become self-supporting. We find no abuse of discretion.

We also reject Denis' contention that because Linda was frugal during the marriage, she now is afforded a grander lifestyle than that to which she was accustomed. Denis has offered no evidence that Linda will not continue to be frugal. Income provides more than tangible possessions; it provides present and future security as well. Denis and Linda together achieved increased earnings during their twenty-five year marriage. As marital partners, both contributed to the stream of income; thus, both should share in the rewards of it. *LaRocque,* 139 Wis. 2d at 39, 406 N.W.2d at 742. If forced to live solely on her own salary, the financial security Linda helped to build—in part by her frugality—will be lost to her.

The court's award of $2,000 a month for eight years yields an income to Denis of approximately $49,000 and to Linda of approximately $43,000, roughly the 50/50 income division the law presumes is reasonable. *See id.* After considering the facts of record, the appropriate statutory factors and the fairness and support objectives,

the court determined that it need not depart from that recognized starting point. We conclude that the court's award is a reasoned and reasonable decision because it reflects a rational mental process and consideration of the relevant law and facts. We see no abuse of discretion.

Linda's cross-appeal involves the disposition of Denis' stock retirement fund and stock options. For purposes of the marital estate, the trial court used the value of the fund as of the date the trial commenced. Likewise, it ruled that only those options exercisable as of the first day of trial would be included in the marital estate. Linda contends that the trial court should have made its determinations based on the date the divorce was granted. Under these circumstances, we disagree.

Denis was a member of and participant in his company's stock retirement fund. The fund's balance is determined each year on December 31. When the trial began on August 9, 1990, only the 1989 figures were available. The trial was then adjourned and did not recommence until January 7, 1991, at which time the 1990 figures were available. They showed the fund had increased in 1990 by $16,317.

Also at issue are two stock options Denis' company awarded him for outstanding performance. The options allowed Denis to purchase a certain number of shares at a given price. The ability to exercise the options was split into thirds. On one of them, one-third could be exercised in 1990, one-third in 1991 and the complete option in 1992 and thereafter. The second option was similarly arranged, but was exercisable in 1991, 1992 and 1993 and thereafter.

On the first day of trial in August 1990, only one-third of the first option was exercisable. On the date of divorce (May 9, 1991), however, two-thirds of the first

option and one-third of the second option could be exercised. According to Linda,

> [t]he value of that one-third using the stipulated stock value of $40.50 per share was $6,900.00. The total value of the first option was $20,697.73 using the same stock value. The total value of the second option at the $40.50 per share value was $9,808.56.

The trial court ruled that only the one-third of the first option exercisable as of the first day of trial would be considered part of the marital estate. That amount would be split 50/50 if and when Denis exercised it.

■

A property division generally rests within the sound discretion of the trial court. *In re Brandt,* 145 Wis. 2d 394, 406, 427 N.W.2d 126, 130 (Ct. App. 1988). Unless the trial court's decision is premised upon legal or factual errors, we will not find an abuse of discretion. *See id.*

■

Assets must be valued as of the date of divorce unless special circumstances exist which warrant deviation from this rule. *Id.* at 421, 427 N.W.2d at 136. In *Brandt,* a four-and-one-half-year lapse between the date of divorce and the trial court's final decision was held not to constitute special circumstances because the parties themselves were the cause of the delay. *Id.* at 422, 427 N.W.2d at 136. This court stated:

> We envision the "special circumstances" rule as applying to conditions over which a party has little or no control—not where a party's own conduct has contributed to the special circumstances.

*Id.*

Here, trial began on August 9, 1990. The court then adjourned the proceeding after half a day because of its

286

calendar. Both parties requested prompt rescheduling. The record is sketchy as to what occurred next. The August 9 trial court document labeled "Minutes" states: "Adj'd to another ½ day. Adj. to November 13, 1990 @ 8:45 A.M." No reason for a November, rather than an August, date is given. The November 13 "Minutes" sheet states: "Attorney Terry Iaquinta [Denis' attorney] ill—rescheduled to January 7, 1991 @ 8:45."

We conclude that "special circumstances" existed here because the five-month delay between trial dates and the additional four-month delay before the divorce judgment was issued appear to have been the result of conditions over which the parties had no control. When the trial court initially adjourned the proceeding because of its schedule, both parties urged prompt rescheduling. The record contains no evidence or suggestion that either party attempted to unnecessarily prolong the trial's recommencement. Accordingly, we affirm the trial court's determination to treat the fund and stock options as of the date the trial began.

*By the Court.*—Judgment affirmed.